**WILLIAMS v. LEFORCE et al.**

No. 24173.   Oct. 20, 1936.

Guy L. Andrews, Theo. D. C. Frear, and W. H. Moore, for plaintiff in error.

William T. Rye, for defendants in error.

PER CURIAM. This suit was instituted in the district court of Craig county by plaintiff in error for the recovery of a debt and foreclosure of a mortgage given to secure the same. The defendants in error J. S. Leforce, Sarah Leforce, and E. E. Leforce, who will hereinafter be referred to simply as defendants, filed their answer admitting the execution of the note and mortgage sued on in plaintiff's petition. They further pleaded that the note sued on had been fully settled, paid and discharged by the execution and delivery of a quitclaim deed from defendants to plaintiff, which was delivered to J. W. Bashore. It was alleged that the said J. W. Bashore was a duly appointed agent of the plaintiff with authority to settle the matter and claims of the plaintiff against said defendants.

Plaintiff by reply specifically denied that J. W. Bashore was the agent of plaintiff or was authorized to accept the deed to the land described in plaintiff's petition in settlement of the indebtedness therein described. On the issues thus made the case was tried before a jury, which at conclusion of the trial rendered a verdict for the defendants. Judgment was entered thereon and motion for new trial overruled and this appeal perfected.

Five assignments of error are made, but only two propositions are really urged in the brief of plaintiff in error. The first is that the court erred in admitting evidence over the objection of plaintiff, consisting of correspondence between Bashore and a broker-age company which negotiated the mortgage involved to plaintiff. We have examined the entire record with care, and have concluded that no error was committed by the court in this respect, for the reasons and under the authorities hereinafter set forth.

The other proposition urged is that the evidence was insufficient to establish the allegation that J. W. Bashore was the agent of plaintiff, and, as we view it, this was the controlling issue in the case. Plaintiff insists that the case being one of equitable cognizance, this court has the power and is charged with the duty of considering the whole record and weighing the evidence. We do not agree with this contention, but are of the opinion that the case was a law case, and that the extent of our examination of the evidence is simply to ascertain whether or not there is any competent evidence reasonably tending to support the verdict and judgment. Brouse v. Cox, 129 Okla. 130, 263 P. 1088; Swearingen v. Moore, 138 Okla. 24, 280 P. 295.

The plaintiff testified by deposition, in which after testifying that she was the owner of the note and mortgage sued on and that same had at all times been in the actual physical possession of her husband, H. W. Williams, she emphatically denied that J. W. Bashore was ever authorized, employed, or vested by her with authority to settle on her behalf her matters and claims against the defendants, and further that she ever directly or indirectly authorized the said J. W. Bashore to accept on her behalf a quitclaim deed conveying to her the property described in the mortgage in settlement thereof. The witness further testified:

"And throughout the entire transaction as a result of which I became the owner of the note, interest coupons, mortgage and the assignment thereof, Mr. Williams, my husband, has acted as my sole agent and representative."

H. W. Williams, husband of the plaintiff, likewise testified by deposition as follows:

"I am the husband of the said Frances B. Williams, plaintiff in said cause, and I am now, and have been throughout the entire transaction involved in said suit, acting as the sole agent and representative of my wife."

The witness J. W. Bashore, called by the defendants, after relating in some detail the transaction from the time the mortgage was executed by defendants until same was acquired by the plaintiff, testified as follows:

"Q. When Mr. Williams was down here, did you have any talk with him about this loan? When was Mr. Williams here? A. He was here one time I think in the fall of 1927, or else in 1928—early in 1928. By that I mean prior to this time. I think it was in the fall. I know he took some pictures and we had some pumpkins in those pictures. Q. At that time you said you had several other loans for Frances B. Williams? A. I have had quite a little business with the Williams. Q. At that time, when he was down here, what did he tell you to do with this loan? A. We talked about this loan and others. He said, 'Now, Joe, I have had to take over a bunch of this stuff and don't want to take any more,' but he says, 'You are here on the ground,' —he says, 'I have just come out of Arkansas and the stuff down there looks awfully bad, while the stuff up here looks pretty good. If you have to take them, take them, and if you don't have to, don't take them. You will have to use your own judgment. I am just leaving it up to you.' Q. Has Mr. Williams ever withdrawn that authority? A. Not to me. * * * Q. This deed was executed and left with you? A. Yes, I drafted the deed for Mr. Leforce. Q. And he gave it? A. Yes."

The question presented here is not a new one. Many similar cases have arisen in recent years in which the fact situation is very similar to that in the case at bar, although in a number of the cases the question involved the payment of interest to alleged agents of the investor. We thus find that the rules applicable to such cases have been well defined. In Brouse v. Cox, supra, suit was brought for the recovery of a debt and foreclosure of a mortgage securing the same. The defendant pleaded the payment of interest to Security Land Credit Company, which was alleged to be the agent of the principal to collect the same. In that case, as in this, the plaintiff denied the authority of the alleged agent to collect either interest or principal for her. The defendants admitted owing a balance after crediting the sums paid the alleged agent. The result of the trial is disclosed in the following language from the opinion:

"When the case came to trial it was submitted to the jury on the question as to whether the Security Land Company was the agent of plaintiff and authorized to receive the payments, and upon this issue the jury found in favor of defendants, and returned a verdict in favor of plaintiff for the $848 admitted by defendants to be due."

The conclusions of the court on which the opinion was based appear from the following:

"Plaintiff assigns as error the admission of certain evidence and the giving of certain instructions, but we think there was no substantial error in the admission of evidence, nor the instruction given, or in refusing those offered.

"The question here to be determined was whether or not there is any evidence reasonably tending to support the verdict of the jury.

"It is well settled that in this class of cases, when there is any competent evidence reasonably supporting the verdict, such verdict will not be disturbed. Jilson v. Dickinson-Reed-Randerson Co., 125 Okla. 276, 257 P. 759; Ginner & Miller Pub. Co. v. N. S. Sherman Machine & Iron Works, 93 Okla. 221, 220 P. 650; Holland v. Scheruble Heating, Plumbing & Repair Shop, 99 Okla. 141, 226 P. 39; Schoonover v. Beveridge, 108 Okla. 114, 233 P. 728. * * *

"Plaintiff testified that she entrusted the entire matter to Robinson, Catlin, Mulford & Smith; that she had know this firm since about 1907 or 1908; that it had been her custom to let them look after the collection of her interest; that she 'expected regularly' for that firm to take care of that part of her business for her, 'in such manner as they saw best'; that she had transacted other business with this firm, and what she had said with reference to this particular instance was true generally.

"It is contended by plaintiff that, though Robinson, Catlin, Mulford & Smith were her agents in the matter, it was not shown that they had express authority to employ a subagent, and that under the law they had no implied authority so to do.

" 'The general rule is that an agent has no implied authority to delegate his powers to a subagent, and anyone employed by him as a subagent, does not become the agent of the principal, without the principal's consent.' Messman v. Lower, 84 Okla. 151, 202 P. 1014.

"The rule is stated in 21 R. C. L. 860, as follows:

" 'It is a general rule that, in all cases of delegated authority, where personal trust or confidence is reposed in the agent, and especially where the exercise and application of the power is made subject to his judgment or discretion, the authority is purely personal, and cannot be delegated to another, unless there is a special power of substitution either express or necessarily implied.'

"It will be seen then there may be in certain instances an implied power in an agent to employ a subagent. In the same paragraph, it is said:

" '* * * Authority may be implied in the absence of express authority, whenever

there is a necessity therefor, or the employment of subagents is usual and customary.'

"In 2 Corpus Juris, 687, it is said:

"'As a general rule an agency to collect and receive money is one of personal trust and confidence, and therefore cannot be delegated to another, unless the agent is specially authorized so to do; but this rule does not apply to a general agency to take charge of and manage the business of a principal.'

"The evidence showed that Robinson, Catlin, Mulford & Smith were authorized to handle plaintiff's business, of which this was a part, in such manner as they saw best. Plaintiff, herself, testified in reference to this particular matter that whatever method Mr. Catlin, of the firm of Robinson, Catlin, Mulford & Smith, employed, was satisfactory to her, and that they were 'expected' to take care of that part of her business, and to handle it in such manner as they saw best. She also testified that that was true generally, and not only in this particular instance. * * *

"The evidence showed that plaintiff and Robinson, Catlin, Mulford & Smith were located at Rockford, Ill. The debtor lived in Rogers county, Okla., and the debt, principal and interest, were payable at the Exchange National Bank, Tulsa, Okla. All this tended to show the necessity for the employment of a subagent for the purpose of collection.

"In Schoonover v. Beveridge, supra, it was held:

"'Where the facts upon the question of agency are controverted, it becomes an issue to be determined by the jury under proper instructions of the court; and the jury may consider all the facts and circumstances introduced in evidence in such determination.'

"With all these facts and circumstances in evidence, we cannot disturb the verdict of the jury.

"The judgment of the district court based upon the verdict should, therefore, in all things be affirmed."

The case of Swearingen v. Moore, supra, is likewise closely in point. In that case plaintiff brought suit on a promissory note and sought to foreclose a mortgage securing the same. Defendants admitted the execution of the note and mortgage, but alleged that payments of principal and interest were made to the Security Land Credit Company as the agent of plaintiff. Plaintiff denied the appointment or designation of the alleged agent and alleged that she at all times had and held the actual physical possession of the note and mortgage, and that no person was authorized to collect any part of the principal of said note before its maturity. Trial of the cause resulted in a verdict for the defendants. The judgment thereon was affirmed by this court, which said:

"There are 19 assignments of error, but plaintiff in her brief says:

"'The only questions of real issue in the case were (a) whether the plaintiff, either directly or through an agent, authorized the defendants to make the payments on the principal note, and at the time such payments were attempted to be made; (b) whether or not the Security Land Credit Company had authority to receive and collect the payments attempted to be made on the principal note, and thus bind the plaintiff.'

"We think this true, and that the only question to be determined is whether there is any competent evidence of agency tending to support the verdict of the jury. This is substantially the only question involved There is no question as to the payments having been made by defendants. In fact, the record discloses canceled checks showing each payment as alleged by defendants, and the record clearly shows these payments to have been made by defendants to the Security Land Credit Company. The record further shows that plaintiff received payment in full for all interest coupons, save and except the one due March 1, 1926. The $800 paid on the principal was kept by the Security Land Credit Company. The only question then is: Of whom was the Security Land Credit Company the agent, and, if the agent of plaintiff, did it have authority to collect any part of the principal of the note before its maturity? * * *

"It is admitted by plaintiff that Hellman and Nack were her agents, but it is insisted that they were without authority to appoint or designate the Security Land Credit Company as subagents, so as to empower it to collect either interest or principal for plaintiff. Gaar Scott & Co. v. Rogers, 46 Okla. 67, 148 P. 161; Peoples Bank v. Frick Co., 13 Okla. 179, 73 P. 949, and Ely Walker Dry Goods Co. v. Smith, 69 Okla. 261, 160 P. 898. are relied upon on this point. These cases hold in accordance with the general rule, as stated in 2 C. J. 685, that an agent in whom is reposed trust and confidence, or who is required to exercise discretion or judgment, may not intrust the performance of his duties to another, without the consent of his principal. It is clear that subagents may be appointed when their appointment has been expressly authorized by the principal. 2 C. J. 687. But express authority to appoint subagents is not always necessary. Such authority is usually to be implied when the agency from its very na-

ture is such as to make the appointment of subagents necessary and proper. * * *

"We conclude that there was ample evidence to submit the question of the agency and implied authority of the agent to the jury. In Reed v. Robinson, 83 Okla. 68, 200 P. 773, it is held:

" 'The question of agency, when made an issue in a case, is a question of fact to be determined in law actions by the jury, and in equity actions by the court, from all the facts and circumstances connected with the transaction, and, like any other question of fact, may be proved by circumstantial evidence.'

"This being sufficient upon which to submit the question of agency to the jury, we deem it unnecessary to further review the evidence as to the extent of the authority of the agent. The testimony of Gus and Joe Bashore and of John V. Hellman and Joseph N. Nack is clearly sufficient to support the verdict of the jury."

This court has followed the rule announced in the foregoing case in the recent decision of Kelch v. Blevins, 177 Okla. 163, 57 P. (2d) 1189, in which the issues were much the same as here. In the opinion in that case we find the following language:

"The argument of the plaintiff appears to be based also upon the assumption that there must be an actual delivery of the negotiable instrument by the plaintiff before there is an authorized agency, but the cases cited do not support this argument. In Chase v. Commerce Trust Co., cited in Beasley v. Sparks, supra, [163 Okla. 15, 20 P. (2d) 584] and relied upon by the plaintiff in this case, the distinction is not taken upon the delivery of the instrument, but upon the question of agency. In Hoffman Bros. v. First National Bank of Quapaw, 159 Okla. 81, 14 P. (2d) 412, the court said:

" 'An actual agency to collect negotiable paper may arise by implication from a course of conduct, irrespective of the matter of possession of the instruments as evidence of authority.'

"Although the fact situation is somewhat different to the case at bar, the rule is conclusive of the fact of necessity of actual physical delivery of the note by plaintiff. So it will be seen that Chase v. Commerce Trust Co., together with Green v. Struble and Bale v. Wright, supra, as suggested above, were not based upon the failure to deliver the papers nor the failure to wait until the paper was due, but rather upon the failure of the facts to support agency. In this connection we cite Brouse v. Cox, 129 Okla. 130, 263 P. 1088. In that opinion this court said:

" 'The general rule is that an agent has no implied power to delegate his powers to a subagent, and anyone employed by him as a subagent does not become the agent of the principal, without the principal's consent, but such power may be implied where the powers of the agent are general and the necessity for the appointment of a subagent is apparent from the nature of the business.'

"Brouse v. Cox, supra, was cited in Green v. Struble, supra, and distinguished on the ground that in the latter case agency was shown such as to justify the appointment of a subagent.

"Subsequent to these opinions this court considered a similar state of facts in Illinois Valley Trust Co. v. Sherley, 159 Okla. 90, 14 P. (2d) 385, and therein the court said:

" ' "Agency to collect money for the owner of a note, when made an issue, is a question of fact to be determined, in proper cases by the jury, from all the facts and circumstances in evidence." Swearingen v. Moore, 138 Okla. 24, 280 P. 295.' "

Applying the rules announced in the cases from which we have quoted above to the case at bar, it is our conclusion that there was competent evidence which justified the submission of the case to the jury, and that its verdict based thereon should not be disturbed.

The judgment of the trial court is therefore affirmed.

The Supreme Court acknowledges the aid of Attorneys Coleman H. Hayes and D. I. Johnston in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Hayes and approved by Mr. Johnston, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration, this opinion was adopted, as modified.

McNEILL, C. J., OSBORN, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur. RILEY, BAYLESS, BUSBY, and WELCH, JJ., absent.